Good morning, Your Honor. My name is Ji Hsien-Li, and I represent the petitioner. There are two separate asylum claims in this case, and I will address the petitioner's Falun Gong claim first. In this case, neither the BIA nor the IGA made an explicit adverse credibility determination against the petitioner regarding his Falun Gong claim. Therefore, the petitioner must be presumed to be credible. The petitioner, based upon his credible testimony and background information contained in the country reports, has established that he suffered past persecution and he has a well-founded fear of future persecution based upon the fact that he is a Falun Gong practitioner. In terms of the past persecution claim, he was not detained, your client was not detained, right? That's right, Your Honor. So there was just a visit to his house by the police? Not necessarily, Your Honor. In addition to the fact that he was prohibited from practicing his religion, namely Falun Gong. In the case Zhang v. Ashcroft, the court is of the opinion that the prohibition of a membership in a particular religious group in itself. Where is that in the record? Yes, Your Honor. In my brief, I substitute Zhang v. Ashcroft. Not the case, but where in the record is established that he was prohibited from exercising his faith? Yes, Your Honor. First of all, there was a nationwide ban on Falun Gong. Right, but I think the question is, was your client ever specifically and personally told he couldn't practice a religion as opposed to the nationwide ban? He personally did not have any encounter with the authorities. So is the claim you're making that every Falun Gong practitioner in China is entitled to asylum? Yes, Your Honor, because if you look at the... Without regard to his personal subjective situation? Without regarding, Your Honor, because based on the country condition, there's a nationwide ban, and every single Falun Gong practitioner, even though sometimes if they did not make this belief public, would still be subjecting to persecution. Other than your contention about the countrywide ban, is there anything specific about your client's case that suggests that he was subject to past persecution? Yes, Your Honor, and then you look at the person who was similarly situated. No, I'm asking about your client. No, Your Honor. Besides, as Judge Thomas pointed out, besides that there were two visits by the authorities. Well, let's assume for the sake of argument there's no past persecution proven. How about the well-founded fear of future persecution? Is there anything, is my understanding of the record correct that nothing has happened in the last decade or so to his family? No, Your Honor, because the family, the petitioner never claimed that the family was in any way involved in Falun Gong practice. No, no, but what I meant, I guess, my question probably wasn't phrased in the best way, but the police haven't come to the house looking for him in the last decade, is that right? No, Your Honor, the record doesn't say either way whether they went to his house or the police hasn't gone to his house. The record is just silent on that issue. Well, the reason I ask is that in most of the cases where we look at the well-founded fear of future persecution, there's a more recent activity, there's some indication that the police are still interested in the petitioner. Do we have any of that indication here? No, Your Honor, I must admit it, because as I pointed out, neither Petitioner's prior counsel nor the government, nor the IG, asked any questions regarding as to whether or not the police went to his house recently. And also, on that issue, I just want to point out, Your Honor, Petitioner submitted his asylum application in the year 2003, and his case did not get heard in 2006. So actually, if we were thinking around that line, then the petitioner was being punished simply for the administrative delay in adjudicating his case. And I guess in assessing whether or not the petitioner has a well-founded fear of future persecution, the most important source would be the country, the most recent country report. And the most recent country report contained in the record clearly shows there's still an ongoing nationwide crackdown on Falun Gong practice. Is the most recent country report a 2006 report? So there was the court to send this case back to the PIA and then to have the most recent, most likely, for example, the most recent would be this year, last year, for that country report to be included in the record to assess whether or not Petitioner has a nationwide, has a well-founded fear of future persecution. Based upon, as I.J. pointed out, there's a pattern of persecution. If Petitioner can show there's a pattern of persecution, then he does not have to show that he is singled out. You didn't make a case of pattern in practice below in this case, did you? Not before the I.J., Your Honor. Right. I mean, if you're saying that everyone who practices this religion should be granted asylum, then you'd have to make a pattern of practice case based on that, and we don't have that. We don't have any pattern of practice case based on Falun Gong, do we? Yes, Your Honor, just based upon the country report. No, no, I mean, we don't have a decision that says there's a pattern of practice of discrimination against Falun Gong that would. No, Your Honor. But if we look at the country report and then look at the particular situation Petitioner faced, and then I think every reasonable fact finder will find that there's at least one in ten chance that the Petitioner will face persecution. If he goes back to his home country and practices Falun Gong, the one in ten chance would be there. You have about two and a half minutes. Do you want to save some for a bottle? Yes, sir. Okay, thank you. Good morning, Your Honors, and may it please the Court. My name is Rob Stalzer, and I'm here on behalf of the Attorney General. Like Petitioner, I would divide this case into two separate segments, but mine differ in some respect to his. I believe that the first segment that we should discuss is probably the fact that Petitioner did not meet his burden because he did not testify credibly. And then the second, just like the IJ, that he did not meet his burden because he didn't present the evidence necessary to make a claim of asylum. The Falun Gong claim, he's been pretty consistent about that, hasn't he? He has been consistent about it. He told at the airport interview. Yes, Your Honor. He described it in the asylum application that's there. And he testified about it in front of the IJ, right? He did. Were there any inconsistencies in the testimony about Falun Gong? Not that the IJ pointed out or that the Board pointed out, Your Honor. So I want to see if you differ from your opponent on this. The IJ didn't seem to make any specific adverse credibility determinations with respect to the religious persecution claim. Is that your position, too? Yes, sir, with the exception of one line in the IJ decision where he says, regardless of the credibility or exaggeration of facts regarding whether he was actually hiding out from authorities, the IJ was talking about the Falun Gong claim. Right, but he didn't say. He said, even, I suppose that's saying, even if I were to find him not credible. He hasn't made his claim. In other words, kind of like an alternate holding. Right, but he didn't make specific adverse credibility determinations. An adverse credibility determination overshadows his entire testimony. Well, that's my question for you. So let me ask it better. Sure. He did make adverse credibility determinations with respect to the population control claim. Specific. Specific ones. Do those carry over to the Falun Gong claim? Absolutely, Your Honor. And what case do you cite for that proposition? I have no case to cite to that. I have the statute which says that his testimony shall be evaluated to determine whether his testimony is credible or not. It's not his individual claims are credible, this claim is credible, or that claim is credible. He sat down in court and testified for about an hour or two about his population control claim and then for another segment. And he didn't simply become credible halfway. And that makes some sense to me, but you've got an IJ who says, With respect to the population control claims, I make specific findings of adverse. I don't find you credible for the following reasons. On the Falun Gong claims, as I read the IJ's report, the IJ says, Well, you haven't established the level of persecution that would be necessary to get asylum. But doesn't say, I don't believe that you're a practitioner. My reading is the same, Your Honor, as yours. So if that's the case, then would you address Mr. Lee's claim that being a practitioner itself is enough? Certainly, Your Honor. Certainly that is a necessary component to make a claim based on asylum, but he would still need those other necessary elements of an asylum claim. He needs to show that not only will he be targeted because of his practice, not just because he's a practitioner, which I think we're all agreed he is, but also that he would be targeted because of it, not just back then, but presently on his return to China, and that being targeted means he will be subjected to harm rising to the level of persecution. And especially those last two elements, we don't have in this case. He never testified as to what happened to the other practitioners who were arrested. He didn't testify as to what he thought would happen to him if he were arrested. And so we don't know. We simply don't know whether this would be a claim that rises to the level of persecution. And, Your Honors, it was his burden to make that demonstration before the IJ. So how do you distinguish the prior cases we have on the Zhu and Zhao? Right. I think in those cases they had shown that there was at least a 10 percent chance that they in particular would be subject to persecutory harm in those cases because of their membership in the Falun Gong movement, which was known to the Chinese authorities. He did testify that friends of his were arrested, right? He did, yes. But we don't know what happened to those friends. I want to go back to Judge Thomas's question. We've had at least a few published opinions and many more unpublished ones in which Falun Gong practitioners were given asylum. What differentiates his case from the others? I think the vagueness of his claim. Again, he's simply saying, I am a member of Falun Gong and that should be enough. Well, no, what he says is, I'm a member of Falun Gong and the police arrested my friends. I was told to flee and the police came to my house. That's what he's saying. Even there. And the other cases, I agree, I think are a little stronger in terms of continuing police interest, but I'm not sure where the line can be drawn. At least there's some evidence in this record of individual interest. There was, but even that was vague. He was asked specifically. Now, he wasn't there for when the police came to his house. His wife told him. And he was asked specifically during testimony, did your wife tell you why the police were looking for you? And his only testimony on the subject was, quote, someone had told her to ask me not to go back. So we don't technically know that the police were even looking for him. What's your alternative hypothesis on why they were there? Is there anything in the record to indicate they were there? Anything? We don't know, Your Honor. Well, I know, but I mean, what's your alternative theory? I suppose it could have been a welfare check.  Maybe his employer was concerned for him. I don't know, Your Honor. Honestly, perhaps they were looking for him for file-and-gone, but he has to demonstrate that. It is his burden to demonstrate eligibility, not the government's burden to show he's not eligible. And because of his vague testimony on whether they were looking for him and certainly whether they would continue to look for him and whether if they found him he would be harmed in a persecutory fashion, we just don't know. He was too vague. And I think that distinguishes it from other file-and-gone cases that have been granted. I think that was what the I.J. was getting to when he was saying, well, look, regardless of any exaggerations, you just haven't made a file-and-gone claim. And that's what he was saying, was that this is just too vague a claim to sustain his application. So is it your position that he didn't establish either past persecution or a reasonable fear of future persecution? Or a well-founded fear of future persecution, yes. Did the country reports, assuming that he's a practitioner, which I think the government admits, did the government reports get you there? I don't believe they do because they suggest that there is a wide variation across the nation in enforcement of the file-and-gone ban. It seems some people can seem to practice it safely. Some people do not. And again, we need to know if this petitioner in particular is going to be in danger or have at least a 10 percent possibility of danger if he were to return to China. We know certainly for several years he was able to practice after the ban in secret and was without problem up until 2000. I wanted to ask about that. The IJ describes the petitioner as a secret file-and-gone practitioner, but isn't there some evidence in the record that he practiced publicly in 1999? I think the IJ was referring to the period after the 1999 ban because that's what he testified. He said, after it was banned, we stopped doing it out front and we did it secretly. I think that's what the IJ was referring to. But doesn't that undermine the IJ's view that, well, since you were doing it in secret, you were not liable to be persecuted since he was known as a public practitioner? Sure, Your Honor. I think it would, to some extent, undermine the idea that the Chinese government couldn't have known about it. I mean, we already know that his friends were arrested if we credit his testimony as being true. And the IJ doesn't find that testimony not credible? Well, there again, he doesn't explicitly say that. I guess it goes back to my first question. Do our cases require, in order to discount his testimony, find it not credible, that the IJ be more specific? For a pre-real ID case like this, the IJ must make adverse credibility determinations that go to the heart of an asylum claim. In this case, they went to the heart of his population control claim. True. And the petitioner is now trying to divorce those claims, saying, well, he may have been, maybe he wasn't, you know, the adverse credibility. I mean, he hasn't actually argued that the adverse credibility determination was wrong for the first claim, right? But so we're supposed to pretend that he was. Do we assume credibility on the religious persecution? Isn't our case law that in the absence of an adverse credibility determination on review, we assume credibility? Yes, Your Honor. But we do have an explicit adverse credibility. We don't have it as to the Falun Gong claim. As I said. Because the IJ didn't do that. Now, I can understand your argument if the IJ had said, I don't believe his testimony at all, and therefore all of his claims fall. But the IJ, neither the IJ nor the BIA did that. They rejected the population control claim on the adverse credibility grounds and then reached the merits. So how can we assume that they made an explicit adverse credibility finding as to the Falun Gong? I think because the adverse credibility determination over, you know, it reaches the entire testimony. That's not what they said in their opinion, though, did they? Well, they both kind of stepped past it. That's what I was reading in the line from page 10 of the IJ's decision where he says, well, regardless of the exaggerations, you know, he doesn't have a Falun Gong claim. It seems to me that's more in the flavor of an alternate holding saying, well, look, even if you had testified credibly, your claim isn't going to. Do you have a case that says we can accept a flavor as a proxy for an explicit adverse credibility? No, Your Honor. There is one case I'm familiar with, but I can't cite it off the top of my tongue, where the board was – where this Court held that where the board indicates that it was skeptical of a testimony after the IJ's adverse credibility determination, that would be sufficient to show that the board had adopted it. Okay. Well, let's assume for the sake of argument that he was credible on this claim. Why don't you think there's a 10 percent chance of him getting persecuted when he goes back as a practitioner? Because he didn't testify as to the facts necessary to make that conclusion. We still don't know whether the police are still interested in him. We don't know what would happen to him if they found him. Again, the counterpoint sort of indicated it differs based on location. And we don't know. He didn't present the evidence necessary to conclude that his location is going to be a place where he would be harmed in a persecutory fashion. Again, he didn't testify what happened to his friends when they were arrested. We know they were arrested. Were they immediately released? Again, we don't know. Were they tortured? We don't know that either. And the fact that we don't know means he didn't present enough evidence. He didn't meet his burden to make an asylum claim, to establish eligibility. Thank you, Counselor. Thank you. Well, Your Honor, I strongly disagree with the government position that the Falun Gong practitioners are somehow there's a variation in China from place to place as to some practitioners are facing harsher persecution while some others maybe are facing more lenient treatment. That's not what the country reports say. According to the most recent country report in the record on page 161, the administrative record, it says in 2001 the government launched a massive anti-Falun Gong propaganda campaign, initiated a comprehensive effort. So the word comprehensive effort clearly indicates the crackdown on Falun Gong practitioners is nationwide. But I still want to go back to what I asked you before and see if you had any further thoughts about it. I take it your position is that if a petitioner testifies credibly that he or she is a Falun Gong practitioner,  Based on the country report, Your Honor, based on the indication, there's a nationwide crackdown. So they need not show a personal subjective fear or an objective fear any more than just by – because it seems to me that's all your client really did. He said, I'm a practitioner. Here's the country report. Give me asylum. Is that a fair summary of this record? It's not – I think the petitioner has shown more than that. He did show that the people who are similarly situated as himself were persecuted. And also he did have information that the police were looking for him and that the police were in fact visiting his home twice. So there is a personal attention to petitioner in this case besides the country report. And, Your Honor, I just want to point out that in Zhang versus Ashcroft, this court granted a withholding of asylum, which is a much higher standard to meet. And as a matter of fact, in Zhang, Zhang was not even in China. He has been always in the United States. There's no personal targeting of Zhang in that case. And yet the court has no hesitation in finding him eligible for withholding of removal based on the fact that he's a Falun Gong practitioner and his involvement in Falun Gong practice. Thank you, Counsel. Thank you, Your Honor. The case just heard will be submitted for decision. I want to thank both of you for your arguments.
judges: Hawkins, Thomas, Hurwitz